```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: FEB 03 2012
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X

NGC NETWORK ASIA, LLC,                :     09 Civ. 8684 (KBF)

              Petitioner,  :     2:12-mc-00219

    -v-                               :     MEMORANDUM OPINION
                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                           & ORDER
PAC PACIFIC GROUP INTERNATIONAL, INC., :

              Respondent.  :

------------------------------------X

KATHERINE B. FORREST, District Judge:

    This Court has pending before it a Petition for Confirmation of an Arbitration Award by NGC Network Asia, LLC ("NGC") and a Cross-Motion to Vacate the Arbitration Award by Respondent PAC Pacific Group International, Inc. ("PPGI"). For the reasons set forth below, this Court hereby CONFIRMS the arbitration award and DENIES the Cross-Motion to Vacate the award and for a stay of enforcement proceedings.

    This action traces its roots back to 2007. The underlying dispute relates to a Memorandum of Understanding ("MOU") between China Central Television ("CCTV"), PPGI and NGC. The MOU provided that CCTV would air a National Geographic program distributed through NGC. PPGI, which brokered the deal between NGC and CCTV, was to receive a portion of the advertising revenues generated by the broadcast. (Solum Decl. Ex. C at 1-2, Oct. 13, 2009.) NGC's compensation was to be in the form of

ORIGINAL

airtime during the broadcast, which CCTV authorized NGC to sell. CCTV also authorized NGC to sell sponsorships for the program. (Id.) The participants in the MOU were not guaranteed revenue; the amount of money the agreement would generate was dependent entirely on the response of potential advertisers and sponsors. (Id. Ex. C at 2.) In September 2001, NGC notified PPGI that the MOU would be terminated because the arrangement had not been sufficiently lucrative. (Id.)

On March 1, 2007, PPGI filed a "Notice of Intent to Arbitrate/Amended Claim" against NGC with the American Arbitration Association ("AAA"). (Id. Ex. A.) PPGI alleged that NGC did not use commercially reasonable efforts to sell the airtime and sponsorships, depriving PPGI of the compensation to which it claimed entitlement under the MOU. (Id. Ex. A at 5-7.) PPGI asserted claims for breach of contract, breach of the implied covenant of good faith and fair dealing, fraudulent inducement, rescission, quantum meruit and unjust enrichment. (Id. Ex. A at 9-15.)

On March 21, 2007, NGC petitioned the Supreme Court of the State of New York, County of New York, to stay the arbitration and dismiss PPGI's claims on the grounds that they were time-barred. (Id. Ex. F.) PPGI removed that action to the Southern District and filed a cross-petition to compel arbitration. (Id.

Exs. G, H.) On July 31, 2007, this Court denied NGC's petition to stay the arbitration and granted PPGI's cross-petition to compel arbitration. (Id. Ex. I.)

Thereafter, pursuant to AAA procedures, the parties jointly selected an arbitrator from a list provided by the AAA. The selected arbitrator was Robert C. O'Brien, a partner at the Los Angeles branch office of the law firm Arent Fox LLP ("Arent Fox"). (Solum Decl. Ex. N, Jan. 21, 2011.) On June 24, 2008, the AAA wrote to the parties that O'Brien had informed them that the Washington, D.C. office of Arent Fox had done work for the National Geographic Society (the "Society"). (Hebb Decl. Ex. 2, Dec. 8, 2010.) O'Brien also disclosed that the Society was a parent company of National Geographic Television, who O'Brien thought might be a potential witness in the arbitration. (Id.) National Geographic Television was the entity that sold programming to an entity (NGC Network International, LLC) that in turn provided it to NGC. (Platt Decl. ¶¶ 8-9.) Two weeks later, on July 8, 2008, PPGI timely objected to O'Brien serving as the arbitrator in this proceeding. (Hebb Decl. Ex. 3, Dec. 8, 2010.) The next day, NGC provided a submission stating that the Society was only a 25% shareholder of NGC (the ownership interest is in fact approximately 26%). (Id. Ex. 4; Platt Decl. ¶ 5.) The AAA overruled PPGI's objection.

3

On at least four additional occasions, PPGI again objected to O'Brien serving as an arbitrator — claiming that he would be partial due to the Arent Fox/Society client relationship. In response to each objection, the AAA affirmed O'Brien as an acceptable arbitrator. (Solum Decl. Ex. R, Jan 21, 2011.)

On July 11, 2009, O'Brien issued an arbitration decision denying PPGI's claims in their entirety. Pursuant to a provision in the MOU, he then permitted NGC to move for an award of attorney's fees and costs as the prevailing party. (Solum Decl. Ex. C, Oct. 13, 2009.) On October 1, 2009, O'Brien issued the final arbitration award, granting NGC $972,362.09 in attorneys' fees and costs. (Id. Ex. E.)

On October 13, 2009, NGC petitioned this Court for confirmation of the arbitration award. (Dkt No. 1.) PPGI moved to dismiss, transfer, or stay confirmation of that award. (Dkt No. 8.) The motion was denied by this Court on September 20, 2010. (Dkt No. 20.) On September 20, 2010, this Court directed PPGI to submit any substantive opposition it had to NGC's petition for confirmation. The petition was fully briefed on January 24, 2011.

PPGI provides three bases that it argues require this Court vacate the arbitration award: (1) there was evident partiality on the part of O'Brien; (2) the award was procured by "undue

4

means"; and (3) the award was issued in manifest disregard of the law.

DISCUSSION

A. Evident Partiality

The sole basis for the claim of evident partiality relates to the attorney-client relationship between Arent Fox (and in particular the Washington, D.C. office of the firm) and the Society. There is no claim that Arent Fox ever provided services to, or has a form of attorney-client relationship with, NGC (according to the Declaration of Mr. Platt, NGC has never hired Arent Fox (Platt Decl. ¶ 11.)).

Notably, PPGI does not cite to any substantive rulings with respect to the arbitration itself that it claims evidences bias — apart from the general, overarching comment that O'Brien would not impose a significant damage award against "a client" of his firm. (See PPGI's Br. in Resp. to the Ct.'s 12/6/11 Briefing Order at 5.) This claim ignores that the party to the arbitration is not a client of his firm. O'Brien's disclosure related to a relationship between Arent Fox and the Society — not between Arent Fox and NGC. The Society was not a party to the arbitration proceeding; the Society was not a party to the MOU; the Society was not a witness in the proceeding in any way;

the Society has a non-controlling, indirect, ownership interest in NGC. (See e.g., Solum Decl. ¶ 5, Jan. 6, 2012.)

### 1. AAA Rules

Pursuant to their MOU, the parties agreed to arbitrate any dispute "in accordance with the laws of the State of New York, United States of America, and with the then existing rules for Commercial Arbitration of the American Arbitration Association." (Solum Decl. Ex. B at 12, Jan. 21, 2011.) The Commercial Rules of the American Arbitration Association (the "Rules"), in effect at the time the AAA made its determination regarding O'Brien's partiality, stated:

> (a) Any arbitrator shall be impartial and independent and shall perform his or her duties with diligence and in good faith, and shall be subject to disqualification for
>
>     i. partiality or lack of independence,
>    ii. inability or refusal to perform his or her duties with diligence and in good faith, and
>   iii. any grounds for disqualification provided by applicable law. . . .

The Rules further stated that "[u]pon objection of a party to the continued service of an arbitrator, or on its own initiative, the AAA shall determine whether the arbitrator should be disqualified . . . and shall inform the parties of its decision, which decision shall be conclusive." AAA Commercial

Arbitration Rule R-17, Amended and Effective September 17, 2007 (emphasis added).

In accordance with the Rules, PPGI made its objections to the AAA and the AAA determined that O'Brien would not be disqualified. The law in this District and Circuit clearly states that the parties are bound by the AAA's determination. See Koch Oil, S.A. v. Transocean Gulf Oil Co., 751 F.2d 551, 554 (2d Cir. 1985) (holding that party could not contest the timeliness of an arbitration award once the AAA ruled that the award was timely because the parties adopted the AAA rules to govern the arbitration); Reeves Brothers, Inc. v. Capital-Mercury Shirt Corp., 962 F. Supp. 408, 411 (S.D.N.Y. 1997) ("Where, as here, the parties have adopted the [arbitration body's] rules, the parties are also obligated to abide by the [arbitration body's] determination under those rules.").

Courts faced with motions to vacate arbitration awards rendered pursuant to the AAA rules have referred to the standards set forth in the Federal Arbitration Act (the "FAA"). See e.g., Reed & Martin, Inc. v. Westinghouse Electric Corp., 439 F.2d 1268, 1274 (2d Cir. 1971); CRC Inc. v. Computer Scis. Corp., Case No. 10 CV 4981, 2010 WL 4058152, at *3 (S.D.N.Y. Oct. 14, 2010); Reeves Brothers, 962 F. Supp. at 410.

## 2. The Federal Arbitration Act

"A party moving to vacate an arbitration award has the burden of proof, and the showing required to avoid confirmation is very high." CRC, 2010 WL 4058152, at *3 (citing Ecoline, Inc. v. Local Union No. 12 of Intern. Ass'n of Heat and Frost Insulators and Asbestos Workers, AFL-CIO, 271 Fed. Appx. 70, 72, 2008 WL 833505, at *2 (2d Cir. 2008)). "It is the Second Circuit's policy to read very narrowly the court's authority to vacate arbitration awards pursuant to Section 10 of the FAA." Reeves Bros., 962 F. Supp. at 413 (citing Ottley v. Schwartzberg, 819 F.2d 373, 377 (2d Cir. 1987)). "Any 'colorable justification' will support an arbitral award." Id. at 413 (quoting Fahnestock & Co. v. Waltman, 935 F.2d 512, 516 (2d Cir. 1991)). The FAA, 9 U.S.C. § 10(a), provides that:

> In any of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration-
>
>> 1) where the award was procured by corruption, fraud, or undue means; [or]
>> 2) where there was evident partiality or corruption in the arbitrators, or either of them; . . . .

"[E]vident partiality, within the meaning of 9 U.S.C. § 10 will be found where a reasonable person would <u>have</u> to conclude that an arbitrator was partial to one party to the arbitration."

8

Applied Indus. Materials Corp. v. Ovalar Makine Ticaret Ve Sanaya, A.S., 492 F.3d 132, 137 (2d Cir. 2007) (quoting Morelite Constr. Corp. v. New York City Dist. Council Carpenters Benefit Funds, 748 F.2d 79, 84 (2d Cir. 1984)) (internal quotation marks omitted; emphasis in original). Thus, the question for this Court is whether a reasonable person would <u>have</u> to conclude that O'Brien, whose firm never represented NGC, but has represented an entity (the Society) that is a non-controlling (27%) indirect owner of NGC, exhibited evident partiality. The answer is plainly "No."

PPGI refers to the Applied Industrial case for support for an argument that O'Brien must be found partial due to the timing and manner of his disclosure of the Society/Arent Fox relationship. (See e.g., Consolidated P. & A. in Opp'n and Reply to NG's "Consolidated Mem. of Law in Supp. of its Mot. to Confirm Arbitral Award and in Opp. to the Cross-Mot. to Vacate Arbitral Award at 9.) In Applied Industrial, the court stated that "when an arbitrator knows of a potential conflict, a failure to either investigate or disclose an intention not to investigate is indicative of evident partiality." Applied Indus., 492 F.3d at 138. Thus, "when an arbitrator has reason to believe that a nontrivial conflict of interest might exist, he must (1) investigate the conflict (which may reveal information

9

that must be disclosed under <u>Commonwealth Coatings</u>) or (2) disclose his reasons for believing there might be a conflict and his intention not to investigate." <u>Id.</u>

PPGI is down the wrong path: there is no real conflict created by the Society/Arent Fox relationship. End of story. NGC has submitted sworn declarations from Matthew Solum and Ward Platt stating the following facts:

- The Society has no direct ownership stake in NGC;

- The Society has no management or information rights with respect to NGC;

- The Society is not empowered to appoint or remove directors or officers of NGC;

- The Society has no control over NGC's day-to-day operations;

- There are no commercial arrangements between the Society, which is a not-for-profit organization, and NGC;

- NGC does not purchase programming or services from the Society;

- Historically, National Geographic Television (which is owned by the Society) sold programming to NGC Network International, LLC, some of which is or was used by NGC;

- The contract governing the sale or licensing of that programming was negotiated at arms-length;

- The Society had no involvement in the arbitration between PPGI and NGC;

- Neither NGC nor NGC Network International, LLC, has ever hired O'Brien or Arent Fox;

- No counsel for the Society attended the arbitration proceeding between PPGI and NGC;

- During the arbitration, PPGI never sought any discovery from National Geographic Television; and

- During the arbitration, PPGI never sought any discovery from the Society and no Society witnesses were called at the arbitration.

(See Platt Decl.; Solum Decl., Jan. 6, 2012.)

Given the facts, there was no requirement that O'Brien disclose the Society/Arent Fox relationship — it is tangential, at best, to the dispute underlying the arbitration. But he did.

11

Thus, the mere fact of disclosure — let alone all of the proceedings, process and review that followed that disclosure, was more than adequate to dispose of any question of partiality based on the Society/Arent Fox relationship once and for all.

The purpose of disclosure, is to "encourage[] conflicts over arbitrators to be dealt with early in the arbitration process and help[] limit the availability of collateral attacks on arbitration awards by a disgruntled party." Lucent Techs., Inc. v. Tatung Co., 379 F. 3d 24, 29 (2d. Cir. 2004) (citing Commonwealth Coatings, 393 U.S. at 151 (White, J. Concurring)). Failure to make a disclosure, when one is actually required, could be evidence of bias. See Applied Indus., 492 F.3d at 137. ("A reasonable person would have to conclude that an arbitrator who failed to disclose [a material relationship with a party] was partial to one side.") Neither the Supreme Court nor the Second Circuit have vacated an arbitration award when the arbitrator has in fact disclosed a conflict.[1] No disclosure was required here, but one was made. The facts were reviewed again and again. Under any scenario, O'Brien's disclosure of the tangential Society/Arent Fox relationship was sufficient. There

---

[1] The one exception may be Morelite, 748 F.2d at 84. In that case, the Second Circuit held that a father-son relationship between an arbitrator and an officer of one part to the arbitration rose to the level of "evident partiality." Id. It is not clear from the case whether the arbitrator disclosed the relationship.

12

are no facts indicating any appearance of even trivial partiality, let alone the evident partiality required for this Court to vacate the arbitration award.

B. Undue Means

This Court may also vacate the arbitration award, pursuant to the FAA, if it finds that "the award was procured by corruption, fraud, or undue means." 9 U.S.C. § 10(a)(1). Here, PPGI argues that the award was procured by undue means because: (1) the AAA did not replace O'Brien after finding out about his law firm's relationship with the Society, (2) the AAA did not conduct a sufficient investigation into that relationship, and (3) the AAA did not provide a sufficient explanation to PPGI regarding its decision to retain O'Brien as the arbitrator. (See PAC Pacific Group Int'l, Inc's P. & A. in Supp. of its Answer to Pet. to Confirm, and Cross-Mot. to Vacate Arbitration Award, and Req. for Stay of Enforcement Proceedings at 12.)

PPGI's contention that the AAA's process of determining whether O'Brien should be disqualified for partiality, which resulted in O'Brien being retained as the arbitrator, was somehow the "undue means" by which NGC procured its arbitration award does not add up. Here, the record indicates that PPGI and NGC were both permitted to submit substantial briefing to the AAA on O'Brien's partiality (see e.g., Hebb Decl. Exs. 7, 9, 11,

13

13-17, 19-20, Nov. 15, 2010) and, pursuant to its authority under the Commercial Arbitration rules (which PPGI agreed to abide by), the AAA decided against disqualifying the arbitrator. The law is clear that this cannot possibly amount to "undue means." See Advest, Inc. v. Asseoff, No. 92 Civ. 2269 (KMW), 1993 WL 119690, at *4 (S.D.N.Y. April 14, 1993)("Counsel for both sides thoroughly briefed the AAA on the factual and legal issues involved in the disqualification request. Respondents thus have no claim that petitioner was responsible for procuring an award by undue means."). See also Lucent Techs. v. Tatung Co., 269 F. Supp. 2d 402, 406 (S.D.N.Y. 2003) (finding that an arbitration award was not procured by undue means where the petitioner followed the AAA rules); Polin v. Kellwood Co., 103 F. Supp. 2d 238, 257 (S.D.N.Y. 2000) (same). This Court therefore declines to vacate the arbitration award on this basis.

C. Manifest Disregard

PPGI admits that its final basis for vacatur of the arbitration award — i.e., O'Brien's alleged manifest disregard of the law — is put forth for largely symbolic reasons. (See PAC Pacific Group Int'l Inc.'s P. & A. in Supp. of its Answer to Pet. to Confirm, and Cross-Mot. to Vacate Arbitration Award, and Req. for Stay of Enforcement Proceedings at 14 ("While this

fourth basis must contend with the evolution in the law as to manifest disregard of the law by an arbitrator, it highlights the importance of the other three bases.").) This Court will address it nonetheless.

PPGI claims that the arbitrator "so imperfectly executed [his powers] that a mutual, final and definite award upon the subject matter submitted was not made." (Id. (quoting 9 U.S.C. 10(a)(4)).) Specifically, PPGI argues that the arbitrator violated 9 U.S.C. § 10(a)(3) "and/or" (4) when he "disregarded the covenant of good faith and fair dealing inherent in all contracts under New York law." (Id.)

In order to vacate an arbitration award for manifest disregard of the law, this Court must find that "(1) the arbitrator[] knew of a governing legal principle yet refused to apply it or ignored it altogether, and (2) the law ignored by the arbitrator[] was well defined, explicit, and clearly applicable to the case." Greenberg v. Bear, Stearns & Co., 220 F.3d 22, 28 (2d Cir. 2000). An arbitration award should be enforced "if there is a barely colorable justification for the outcome reached." Telenor Mobile Commc'ns AS v. Storm LLC, 584 F.3d 396, 407 (2d Cir. 2009). Vacatur for manifest disregard is, as a result, "rare" and only done in "extreme" cases. Id.

This is not one of those cases. In fact, it is just the opposite: the arbitrator here correctly stated the law and applied it. In deciding PPGI's Second Claim for Relief — i.e., breach of the implied covenant of good faith and fair dealing — O'Brien found that "New York law does not recognize an independent cause of action for breach of the implied covenant of good faith and fair dealing" and instead merged the claim into his breach of contract analysis. (See Solum Decl. Ex. A at 13.) That is, in fact, the law. Harris v. Provident Life and Accident Ins. Co., 310 F.3d 73, 80 (2d Cir. 2002) ("Under New York law, parties to an express contract are bound by an implied duty of good faith, but breach of that duty is merely a breach of the underlying contract."). O'Brien, citing case law, found that there was no implied covenant for NGC to use "best efforts" to sell advertising because the parties had consciously decided to not include a "reasonable efforts" provision in the MOU. (Id.) Under no interpretation of the arbitration decision could this Court find that O'Brien "refused to apply [the law] or ignored it all together." This Court thus cannot vacate the arbitration award on this basis.

CONCLUSION

It is time for this proceeding to be brought to closure and for the sparring over confirmation of the arbitral decision and

16

award to cease. Accordingly, this Court CONFIRMS the arbitral decision rendered on October 1, 2009, and DENIES PPGI's motions to Vacate the Award and Stay Enforcement Proceedings.

The Clerk of the Court is directed to terminate this action.

SO ORDERED.

Dated:   New York, New York
         February 3, 2012

                                    _____
                                    KATHERINE B. FORREST
                                    United States District Judge